**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kip Jones,<br><br>  Plaintiff,<br><br>v.<br><br>Life Insurance Company of North America, et al.,<br><br>  Defendants. | No. CV-19-04669-PHX-DLR<br><br>**ORDER** |

Plaintiff brought this ERISA action seeking de novo review of Defendant Life Insurance Company of North America's ("LINA") decision to terminate his Life Insurance Waiver of Premium ("LWOP") benefit. Wishing to go outside the administrative record and engage in discovery, Plaintiff filed a brief regarding the need for discovery and its scope, along with a motion to supplement the administrative record. (Doc. 30.) The motion is fully briefed and, for the reasons below, is granted in part and denied in part.

**I. Background**

Plaintiff had been an employee of Sabre, Inc. for 19 years when he became disabled on June 25, 2013. Through his work, Plaintiff had acquired a LINA-issued $228,000 life insurance policy ("Policy"). Because LINA made claims decisions about the Policy it had issued, it operated under a conflict of interest.

The Policy contained an LWOP benefit whereby premiums are waived if the policy holder meets the Policy's definition of "disabled." To meet that definition, a person must

be unable to "perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience." That definition is consistent with the Social Security Administration's ("SSA") definition of disability. Consistent with the SSA, which approved Plaintiff's disability claim, LINA found that Plaintiff met the definition of disabled and accordingly had been providing LWOP benefits. Although there had been no change in Plaintiff's medical condition, in 2018, LINA began a "spontaneous" review of Plaintiff's LWOP claim, finding that he was not disabled.

On October 18, 2018, Plaintiff submitted a mandatory ERISA appeal. On July 9, 2019, after LINA had not rendered its decision on the appeal by the January 26, 2019, regulatory deadline, Plaintiff deemed his claim exhausted and filed this suit. LINA then issued its denial "based entirely on 'paper 'reviews from Drs. Kalp, Belcourt and Koh, all retained by long-time disability industry vendors, Genex, ECN, and MES Sollution." (Doc. 30 at 4-5.)

**II.  Legal Standard.**

The Court reviews de novo LINA's decision to terminate Plaintiff's LWOP benefits. In a de novo review, the Court does not consider whether LINA's decision to deny benefits amounted to an abuse of discretion, but rather the Court evaluates whether the decision was correct. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). In other words, the Court must determine for itself whether Plaintiff meets the definition of "disabled" under the Policy.

Because this is an ERISA case, discovery plays a far more limited role than in most civil cases. Limiting discovery is particularly important when the Court is conducting de novo review. "[T]he district court should exercise its discretion to consider evidence outside of the administrative record '*only* when the circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision.'" *Opeta v. Nw. Airlines Pension Plan for Contract Emp.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (emphasis in original) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)).

In *Opeta*, the Ninth Circuit set forth a "non-exhaustive list of exceptional circumstances where introduction of evidence beyond the administrative record could be considered necessary[.]" *Id.* However, the existence of exceptional circumstances does not necessarily require the admission of new evidence. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (9th Cir. 1993). Although *Opeta* addressed admissibility of new evidence, it is generally recognized that, logically, *Opeta* also pertains to limits on discovery. *Nguyen v. Sun Life Assurance Co. of Canada*, CIV. No. 3:14-05295-JST(LB), 2015 WL 6459689 (N.D. Cal. Oct. 27, 2015).

**III. Discussion**

    **A. Discovery into LINA's relationship with its vendors and experts.**

Plaintiff seeks discovery into LINA's relationships with the vendors providing reviewing experts and its history with the experts themselves. Plaintiff seeks this information for credibility determinations of the experts who provided opinions that LINA relied on in making its decision to terminate Plaintiff's LWOP benefits. Plaintiff seeks discovery into the "vendors (Genex, ECN, MES Solutions) who in turn retained biased doctors such as Drs. Belcourt, Kalp and McCrary." (Doc. 30 at 12.) Plaintiff argues that limited discovery should be allowed because of LINA's history of self-dealing and because the credibility of the doctors upon which LINA relied, Drs. Belcourt and Kalp, is at the heart of the case.

Defendants contend that there is nothing unique or exceptional in this de novo review that would warrant the admission of evidence outside the administrative record, and that any discovery outside the administrative record would not be proportional to the needs of the case because Plaintiff "will neither win a large amount of money nor vindicate vitally important values if she prevails here." (Doc. 34 at 15.)

The outcome of this case turns on the credibility of the experts. This Court has previously ruled that, when presented with diametrically opposed expert reports, the credibility, bias, or prejudice of the experts becomes relevant. (*See* Doc. 40 in *Coffou v. Life Ins. Co. of N. Am.*, No. 2:19-cv-03120-DLR). That experts are paid for their work is

not probative of bias. "[S]everal district courts in this circuit have held that the mere fact that a physician receives compensation from a plan administrator for performing medical reviews is insufficient by itself to be probative of bias." *Polnicky v. Liberty Assurance Co. of Boston*, CIV No. 13-1478-SI, 2014 WL 969973, at *2 (N.D. Cal. Mar. 2014) (citing cases). However, where an expert or the third-party vendor who supplies that expert has a long-standing relationship with or receives substantial compensation from a carrier or industry, and overwhelmingly renders opinions in their favor, such evidence might be important in accessing that expert's bias and credibility.

The exceptional circumstances test set out by *Opeta* is met by the existence of the following four factors: (1) Instances where the payor and the administrator are the same entity and the court is concerned about impartiality; (2) claims regarding the credibility of medical experts; (3) claims which would have been insurance contract claims prior to ERISA; (4) circumstances in which there is additional evidence that the claimant could have not presented in the administrative process.

LINA has an admitted structural conflict and a history of self-dealing, resulting in its claims practices being subject to an extensive national "market conduct study," a 2013 Regulatory Settlement Agreement ("RSA"), and continued monitoring. Plaintiff alleges that LINA repeatedly retains Drs. Belcourt, Kalp, and McCrary, who earn substantial sums performing reviews and examinations for the disability insurance industry. As pointed out in Plaintiff's motion (Doc. 30 at 14), "Drs. Belcourt and Kalp's credibility lies at the heart of this case. If the Court is to find Mr. Jones is not disabled, it must rely on their reports."

LINA argues that the Court should rely solely on the record to make its own credibility determinations. However, information about LINA's history and relationships (or lack thereof) with the vendors and experts, relevant for accessing credibility, will not be found in the record.

Plaintiff's motion identifies areas where LINA has shown institutional bias or has violated ERISA and the terms of its Policy. LINA failed to render a timely decision on Plaintiff's appeal, rejected relevant evidence, and issued "a denial based entirely on 'paper'

- 4 -

reviews from Drs. Kalp, Belcourt and Koh, all retained long-time disability vendors, Genex, ECN and MES Solutions." (Doc. 30 at 4-5.) LINA has not disputed the allegations, nor has it offered evidence of any process to ensure the independence of its vendors.

LINA's conduct puts this case outside the garden-variety "structural conflict of interest" scenario. LINA's history and Plaintiff's unchallenged representations about LINA's relationships with its vendors and their experts raises a concern whether LINA's structural incentive to minimize benefit payments distorts its obligation to fairly handle benefits claims resulting in its employment of vendors and experts who reliably do LINA's bidding. This warrants discovery into LINA's relationships with those vendors and the experts who rendered opinions upon which the determination to terminate Plaintiff's LWOP benefit was based.

In addition to discovery regarding the credibility of the LINA's experts, Plaintiff seeks discovery pertaining to Dr. McCrary, an expert Plaintiff contends has a long history of rendering opinions for LINA and other carriers supporting the denial of disability claims. LINA attempted to schedule an independent medical exam ("IME") by Dr. McCrary. Plaintiff objected to having Dr. McCrary perform the exam, asking LINA to find another doctor. When LINA declined, indicating that there was no other doctor available, Plaintiff refused to appear for the IME. Dr. McCrary did not perform the IME and has not rendered any opinions in this matter. There is no indication that Plaintiff's refusal to attend an IME performed by Dr. McCrary was a consideration in LINA's decision to terminate his benefits.

Discovery into the potential bias of experts rendering opinions is relevant, and under these circumstances, meets the high burden for discovery in an ERISA case. However, because Dr. McCrary did not render opinions in this case, and because Plaintiff's refusal to appear for the IME was not a factor in the decision to terminate benefits, Dr. McCrary's history with LINA and his alleged bias or prejudice is not relevant.

**B. Supplementation of the record.**

Plaintiff seeks to supplement the administrative record with a letter from his treating

physician, Dr. Wechsler. Relying on *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011), Plaintiff argues that Dr. Wechsler's February 12, 2020 letter responding to LINA doctors' record review should be added because LINA did not give him the opportunity to respond to its doctors and because LINA's doctors' reports raised new issues. LINA argues that Dr. Wechsler's letter does not provide any new expert information other than to render criticisms of the claim decision, opinions outside her expertise.

If the letter adds nothing new, it might be cumulative, but not prejudicial. LINA is not harmed by Dr. Wechsler's letter if it does nothing more than restate what is in the records.

LINA also argues that any lack of input from Dr. Weschler on the appeal investigation was Plaintiff's fault. LINA argues that Plaintiff's attorney served as a roadblock to contemporaneous communications between physicians because he required LINA experts to go through him to communicate with Dr. Wechsler. The Court finds that communications with Plaintiff's treating doctor through his attorney were reasonable and he did not act as a roadblock. Plaintiff's attorney passed on written questions from LINA to Dr. Wechsler, who answered them. There is no indication that any question from any LINA doctor was not answered by Dr. Wechsler through this process. LINA had Plaintiff's medical records, as he had consented to their release. However, it was not unreasonable for Plaintiff's counsel to object to unfettered non-consensual *ex parte* communications by LINA with Plaintiff's treating physicians. *See Duquette v. Superior Court,* 778 P.2d 634 (Ariz. Ct. App. 1989).

Finally, LINA argues that ERISA regulations do not contemplate the disclosure of reviewing doctors' opinions prior to the appeal being decided. LINA criticizes *Salomaa* for conflating "the claim-level review (which should have been disclosed after the claim decision) and the appeal-level review (which the regulations did not require the administrator to disclose prior to the appeal being decided)."

Despite LINA's criticism, the *Salomma* Court discussed ERISA's requirement to

furnish to claimant information relied on by the carrier in denying the claim in order to facilitate the opportunity to submit written comments, documents, records and other information relating to the claim. The court found that failing to furnish the medical reports violated ERISA by denying the claimant's physicians the opportunity to submit written comments and perform additional examinations

### C. Proportionality.

LINA argues that the requested discovery is not proportional to the needs of the case, noting Plaintiff "will neither win a large amount of money nor vindicate vitally important personal or public values," and "will never recover a dollar of his life insurance benefits even if he is reinstated. This is a case in which he cannot recover any money in benefits." (Doc. 34 at 15.) It further contends that "[t]he coverage, even if he prevails, is fleeting, lasting only five years. [Plaintiff] has adduced no evidence or argument that he is actually likely to pass away during that short window of coverage." (Doc. 34 at 16.)

Despite assertions that the limited importance of the issues and amount in controversy are not proportional to discovery's burden, LINA makes no argument or showing of burden. LINA's argument that the LWOP benefit, which pays the policy premium for $228,000 in life insurance, is practically valueless is belied by the fact that it has denied the benefit and by the amount of resources it has invested to support that denial. The Court finds that the LWOP benefit is a valuable benefit and that Plaintiff's qualification for that benefit is an important issue at stake in the action.

The Court will require LINA to answer certain interrogatories and respond to requests for the production of documents that explore the history of its relationship, from 2016 through 2019, with the third-party vendors (Genex, ECN and MES Solutions) and the experts (Drs. Belcourt and Kalp), it employed here. LINA will be required to respond to discovery that delves into the number of times it retained and the amount of money it paid to third-party vendors in disability and LWOP claims and medical reviewers utilized here, LINA-generated performance evaluations of the these vendors and medical reviewers, the number of times they concluded that a claimant could perform work, LINA-

generated performance evaluations for LINA employee Mary Faltaous, and any guidelines and manuals used by LINA in evaluating this claim, including the "DMS Expert Resource Professional conduct Statement" and any guidelines and manuals. The Court finds that LINA has the resources to respond to the discovery requests and is the only party with access to the requested discovery. The Court further finds that the discovery ordered herein is relevant and proportional to the needs of the case and that the burden or expense of the discovery does not outweigh its likely benefit. Accordingly,

**IT IS ORDERED** that the Plaintiff's Brief Regarding the Need for Discovery and its Scope and Motion to Supplement the Administrative Record (Doc.30) is granted in part and denied in part as follows:

1. Plaintiff's request for discovery is **GRANTED** as to interrogatories 1, 5-11, and 14-15, and as to requests for the production of documents 1, 3, 4, 11 and 12.
2. All other discovery requested in Plaintiff's motion is **DENIED.**
3. Plaintiff's Motion to Supplement the Administrative Record is **GRANTED.**

Dated this 5th day of May, 2020.

Douglas L. Rayes
United States District Judge